UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO.  24-20196

v.

                            HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
_____/

**MOTION TO DISMISS
PURSUANT TO *GARLAND V. CARGILL*, 602 U.S. 406 (2024)**

Axzavier Hudgins, through counsel, moves to dismiss the Indictment because, as discussed in the attached brief, a "Glock switch" is not a machinegun as defined by 26 U.S.C. § 5845(b) in light of *Garland v. Cargill,* 602 U.S. 406 (2024). The government does not concur.

                            Respectfully submitted,

                            s/Benton C. Martin
                            FEDERAL COMMUNITY DEFENDER
                            Attorney for Axzavier Hudgins
                            613 Abbott Street, Suite 500
                            Detroit, Michigan 48226
                            Phone:   (313) 967-5832
                            E-mail:  Benton_Martin@fd.org

Date: July 2, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO.  24-20196

v.

                           HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
                              /

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### BACKGROUND

Axzavier Hudgins is charged by Indictment with a single count of illegal possession of a machinegun under 18 U.S.C. § 922(o). (R. 16, Indictment, PgID 31.) The indictment charges that Hudgins violated § 922(o) by possessing a "Glock, model 19, 9mm pistol, equipped with a machine gun conversion device." (*Id.*)

According to the complaint, the machine gun conversion device was a "small illicit device that replaces the back plate of the slide of a Glock-style pistol," that "applies pressure to the trigger bar and disables the firearms ability to limit one round of ammunition to be fired per trigger pull." (R. 1, Compl., PgID 7.)

1

Put differently, the Glock pistol, by itself, is a semiautomatic handgun. The government alleges that the attachment of a conversion device, colloquially known as a Glock switch, converted the Glock into a machinegun.

## STANDARD OF REVIEW

A defendant may move pretrial to dismiss if the indictment against him fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). For the indictment to be "legally sufficient," it "must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001).

For purposes of this motion, the Court assumes the truth of the indictment's allegation that Hudgins's possessed a semiautomatic Glock handgun with a conversion device attached. *Id.* at 1080. If this allegation, even if true, does not establish the required elements of 18 U.S.C. § 922(o), including meeting the definition of a "machinegun" under 26 U.S.C. § 5845(b), then this Court should dismiss the sole charge against Hudgins. *United States v. Nagarwala*, No. 17-CR-20274, 2018 WL

405122, at *6 (E.D. Mich. Jan. 14, 2018) (dismissing charge when charged offense did not meet statutory definition).

The Court also must bear in mind that criminal statutes "must be strictly construed, and any ambiguity must be resolved in favor of lenity." *United States v. Enmons*, 410 U.S. 396, 411 (1973); *United States v. Nagarwala*, 438 F. Supp. 3d 821, 825 (E.D. Mich. 2020). "'The temptation to stretch the law to fit the evil is an ancient one, and it must be resisted.'" *Nagarwala*, 438 F. Supp. 3d at 829 (quoting *Moskal v. United States*, 498 U.S. 103, 132 (1990) (Scalia, J., dissenting)).

## ARGUMENT

### I. Glock switches do not meet the definition of machinegun after *Cargill*.

Under 18 U.S.C. § 924(a)(24), the term "machinegun" throughout Chapter 44 of Title 18, is defined in 26 U.S.C. § 5845(b), part of the National Firearms Act. Section 5845(b) defines "machinegun" as follows:

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machine gun and any combination of parts from which a machinegun can be

3

assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

The Supreme Court interpreted this provision this term in *Garland v. Cargill*, 602 U.S. 406, 410 (2024). In that decision, the Court held that certain types of conversion devices attached to semiautomatic firearms cannot be considered machineguns, even if the ATF so designates them. *Id.* In reaching this decision, the Court clarified that courts cannot simply defer to ATF's interpretation of § 5845(b), but instead must carefully examine the mechanical functionality of firearm accessories (like bump stocks and Glock switches) to see if the particular device meets the statutory definition. *Id.* at 415–16.

Moreover, the Court explained that, even if a modified semiautomatic firearm fires more than one shot "by a single function of the trigger," it must also do so "automatically" to meet the definition of a firearm. *Cargill*, 602 U.S. at 424. For the reason, the Court decided, "bump stocks" are not machineguns because, to fire multiple shots, "[a] shooter must also actively maintain just the right amount of forward pressure on the rifle's front grip with his nontrigger hand." *Id.* Thus,

4

bump stocks are not machineguns because "firing multiple shots requires engaging the trigger one time—and then some." *Id.*

What was true of bump stocks is also true of Glock switches. As discussed in the patent for the Glock switch, called a "fire selector system for selecting between automatic and semi-automatic operation of a gun," a switch, when set to allow rapid firing of multiple rounds, stops the trigger reset from engaging, allowing multiple rounds to fire. U.S. Patent No. 5705763A (issued Jan. 6, 1998), *available at* https://patents.google.com/patent/US5705763A. But to fire multiple rounds, the shooter must continue to maintain just the right amount of pressure. *Id.* Without that pressure, the trigger reset will reengage. *Id.*

Handguns generally have "a trigger bar, a reciprocating slide, and a longitudinal firing mechanism." *Id.* at 8. Without the switch, the trigger bar, "mounted below the firing mechanism," is generally "movable into a first position in which the trigger bar engages the firing mechanism and prevents forward motion of the firing mechanism following trigger activation." *Id.* The switch has a "member," a small piece of metal, that slides above the "contact area of the trigger" and "urge[s] the trigger bar away from its first position following trigger activation." *Id.* The member

5

then "repetitively contact the contact area of the trigger bar during its reciprocation with the reciprocating slide." *Id.*

This mechanism is demonstrated in the image below from the patent depicting the "moment of firing of the gun" with the switch attached:



*Id.* at 2, 8.

In this image, the trigger is identified by 20 and the trigger bar is 18. The leg of the firing pin, which typically catches after a shot is fired, is identified as 16. Numbers 102 and 116 identify parts of the switch itself, and 40 identifies the point where the switch contacts the trigger bar. *See id.* at 9. As shown, when the trigger is pulled, the shooter must maintain the right pressure on 20 to allow 18 to maintain the right

6

contact with 116 so that 16 does not reengage and stop another bullet from loading and firing.

Thus, as with bump stocks, "firing multiple shots" with a switch "requires engaging the trigger one time—and then some." *Cargill*, 602 U.S. at 424. The "member" attached to the switch must repetitively contact the trigger bar during its reciprocation, and to allow for that function, the shooter must maintain the right amount of pressure on the trigger. As a result of these multiple steps, and the necessary action by the shooter, switches do not fire multiple rounds "automatically" with "a single function of the trigger" as those terms are defined in § 5845(b), following *Cargill*.

The government may argue that interpreting § 5845(b) to exclude Glock switches, would render the statute useless. But *Cargill* explained why this argument cannot overcome the statutory text:

> The presumption against ineffectiveness cannot do the work that ATF and the dissent ask of it. A law is not useless merely because it draws a line more narrowly than one of its conceivable statutory purposes might suggest. Interpreting § 5845(b) to exclude semiautomatic rifles equipped with bump stocks comes nowhere close to making it useless. Under our reading, § 5845(b) still regulates all traditional machineguns. The fact that it does not capture other weapons capable of a high rate of fire plainly does not render the law useless.

7

*Cargill,* 602 U.S. 406, 410.

Section 922(o) continues to ban traditional machineguns, so it is not ineffective. If Congress also wants to ban selector switches that modify the trigger bar of semiautomatic handguns, then it must do so explicitly. Because Glock switches do not fire multiple rounds "automatically" by a "single function of the trigger," this Court should dismiss the charge against Hudgins.

## II. ATF's interpretation of "machinegun" is not entitled to deference, and this Court instead must apply the rule of lenity to interpret § 5845 in Hudgins's favor.

The government also may ask this Court to defer to ATF's interpretation of § 5845, which classifies "auto sears" as machineguns. ATF Rul. 81-4, https://perma.cc/8D78-9UL4. The government may argue that Glock switches are "auto sears," and that *Cargill* explained in a footnote why auto sears are different than bump stocks. *Cargill,* 602 U.S. at 420 n.4. There are at least three problems with this argument.

First, it is not clear Glock switches are "auto sears" as defined by ATF. ATF's Rule 81-4 examined a device that used a "sear mounting body, sear, return spring, and pivot pin" to convert certain AR15 type semiautomatic rifles equipped with "M16 internal components already

8

installed" into machineguns. ATF Rul. 81-4. The functionality of a Glock switch does not involve these components, and thus does not appear covered by 81-4.

Second, despite noting that auto sears are different, *Cargill* did not say that auto sears fit the Supreme Court's interpretation of machinegun consistent with *Cargill*. For the reasons discussed above, even if Glock switches can be called "auto sears," they do not fire multiple rounds "automatically" with "a single function of the trigger."

Third, like bump stocks, auto sears were not always considered to be "machineguns" by the ATF. In 1981, the ATF abruptly changed course when it decided to define "auto sears" as machine guns. The ATF definition within ATF Ruling 81-4 does not require the auto sear to be attached to or owned with a compatible rifle. *Roe v. Dettelbach*, 59 F.4th 255, 257 (7th Cir.2023).

This interpretation by the ATF is entitled to no deference. On the heels of *Cargill*, the Supreme Court also decided *Loper Bright Enterprises v. Raimondo,* No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024), overruling *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), thus abrogating *Chevron* deference to administrative agencies. Now, courts

9

must exercise independent judgment when evaluating an ambiguous statute, such as § 5845(b): "[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright,* 2024 WL 3208360, at *22. The Supreme Court was especially troubled that *Chevron* deference had allowed regulatory agencies to unpredictably "change course," to the detriment of those it regulates, because, "[u]nder *Chevron*, a statutory ambiguity, no matter why it is there, becomes a license authorizing an agency to change positions as much as it likes." *Id.* at *21. "By its sheer breadth, *Chevron* fosters unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Id.*

Moreover, in addition to not deferring to ATF, the Court also must construe any ambiguity in § 5845(b) in favor of Hudgins. "When ambiguity clouds the meaning of a criminal statute, 'the tie must to go the defendant.'" *United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)). Here, at minimum, § 5845(b) is ambiguous as it pertains to whether selector switches attached to semiautomatic handguns constitute machineguns

10

falling under the criminal prohibition at § 922(o). As a result, under the rule of lenity, this Court must adopt the interpretation favoring Hudgins.

## CONCLUSION

The Court should dismiss the Indictment because the government's allegation that Hudgins possessed a semiautomatic handgun equipped with a selector switch fails to state an offense under 18 U.S.C. § 922(o).

    Respectfully submitted,

    s/Benton C. Martin
    FEDERAL COMMUNITY DEFENDER
    Attorney for Axzavier Hudgins
    613 Abbott Street, Suite 500
    Detroit, Michigan 48226
    Phone: (313) 967-5832
    E-mail: Benton_Martin@fd.org

Dated: July 9, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO.  24-20196

v.

                             HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
_____/

## **CERTIFICATE OF SERVICE**

I certify that I filed this document, on the listed date, using the CM/ECF system, which will notify opposing counsel of record.

                             s/Benton C. Martin
                             FEDERAL COMMUNITY DEFENDER
                             Attorney for Axzavier Hudgins
                             613 Abbott Street, Suite 500
                             Detroit, Michigan 48226
                             Phone:  (313) 967-5832
                             E-mail:  Benton_Martin@fd.org