UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                             Case No. 24-CR-20196

v.                                             Hon. Laurie J. Michelson

Axzavier Sincere Hudgins,

        Defendant.

---

**United States' response and brief opposing Hudgins's motion to dismiss pursuant to the Second Amendment (ECF No. 26, PageID.94)**

---

For the reasons stated in the attached brief, Hudgins's motion should be denied.

                                             DAWN N. ISON
                                             United States Attorney

                                             *s/Jeremiah G. Smith*
                                             JEREMIAH G. SMITH
                                             Assistant United States Attorney
                                             211 W. Fort Street, Suite 2001
                                             Detroit, Michigan 48226
                                             (313) 226-0242
                                             jeremiah.smith@usdoj.gov

Date: August 13, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                                                                               Case No. 24-CR-20196

v.                                                                                 Hon. Laurie J. Michelson

Axzavier Sincere Hudgins,

        Defendant.

---

**United States' brief opposing Hudgins's motion to dismiss pursuant to the Second Amendment (ECF No. 26, PageID.94)**

---

On March 7, 2024, Axzavier Hudgins brandished a Glock 19 pistol equipped with a machinegun conversion device inside of restaurant and later tossed it while running from police. On April 16, 2024, a federal grand jury returned an indictment charging Hudgins with violating 18 U.S.C. § 922(o), which makes possession of a machinegun illegal. (ECF No. 16, PageID.31: Indictment).

Hudgins now moves to dismiss the Indictment under *Bruen*, claiming that § 922(o) is unconstitutional both on its face and as applied to him. He relies on *Bruen* to argue that the federal prohibition on unlawful possession of machineguns violates the Second Amendment. But *Bruen* is not applicable here, because 18 U.S.C. § 922(o) does not and did not implicate Hudgins's right to bear arms under the Second

2

Amendment. *See Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009) (the right to keep and bear arms does not authorize an unlicensed individual to possess an unregistered machinegun for personal use). Post-*Bruen*, no court has held that 18 U.S.C. § 922(o) is unconstitutional. To the contrary, the courts that have addressed it have rejected challenges under *Bruen* and have reaffirmed the validity of the statute. Furthermore, *Rahimi's* affirmation that many categorical bans are presumptively lawful further supports the prohibition against possessing inherently dangerous and unusual weapons like machineguns.

The Court should deny Hudgins's motion to dismiss.

## I.   18 U.S.C. § 922(o) does not violate the Second Amendment

### A. Legal Standard

The Second Amendment to the Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited"; it does not allow every person "to keep and carry any weapons whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller,* 554 U.S. 570, 626 (2008). In evaluating what limitations Congress can impose on citizens' Second Amendment rights, the Supreme Court has directed courts to ask two questions: (1) whether "the Second Amendment's plain text covers an individual's conduct," and

(2) if not, whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.

### B. Courts before and after *Bruen* recognize that machineguns are dangerous and unusual firearms, so the Second Amendment does not protect their possession.

Section 922(o) bans the transfer or possession of a machinegun. It carves out exceptions for (1) the transfer to, or possession by, a person acting under authority of the United States, or (2) any lawful transfer or possession of a machinegun that was lawfully possessed before the statute's enactment.

Hudgins attempts to mount both a facial challenge and an as-applied challenge to this statute, arguing that the law criminalizes possession of a firearm "in common use" for the purpose of self-defense and therefore violates the Second Amendment. (ECF No. 26, PageID.96: Motion to dismiss). His challenges fail, though, because the Supreme Court has made clear that the Second Amendment's plain text does not cover machineguns.

In *United States v. Miller*, 307 U.S. 174, 178 (1939), the Supreme Court upheld against a Second Amendment challenge to two men's federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act, 48 Stat. 1236. Nearly 70 years later, in *Heller*, the Supreme Court reaffirmed *Miller*, explaining that *Miller's* "basis for saying that the Second Amendment did not apply was . . . that *the type of weapon at issue* was

4

not eligible for Second Amendment protection." 554 U.S. at 622 (emphasis in original). *Heller* concluded: "We . . . read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id*. at 625. It continued: "That accords with the historical understanding of the scope of the right." *Id*. *Heller* returned to *Miller* at the conclusion of its opinion. The Court wrote: "*Miller* said, as we have explained, that the sorts of weapons protected were those '*in common use at the time*.' We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 627 (citing *Miller*, 307 U.S. at 179).

Under *Heller*, the Second Amendment does not protect those weapons that were "not in common use at the time" of its passage and that were not "typically possessed by law-abiding citizens for lawful purposes." *Id*. at 625, 627. In his motion, Hudgins cites data that, he contends, demonstrates that machineguns and Glock "switches" are commonly used today by private citizens. (ECF No. 26, PageID.103-105). However, the vast majority of the 740,000 machineguns lawfully possessed in the United States and registered with ATF are in the possession of state and local law enforcement agencies, not private citizens. While federal agencies are exempt from registration by law, state and local agencies are not. 26 U.S.C. § 5841(a) ("The Secretary shall maintain a central register of all firearms [subject to

5

the NFA] which are not in the possession or under the control *of the United States*.").
The only newly registered machineguns post-1986, therefore, are those manufactured for or in possession of law enforcement. The numbers for Glock "switches" are even lower. From 2017 and 2021, the ATF seized just 5,454 machinegun conversion devices. ATF, National Firearms Commerce and Trafficking Assessment: Crime Guns - Volume Two, Part VII – Recommendations & Future Enhancements, at 4 (2023), https://www.atf.gov/firearms/national-firearms-commerce-and-trafficking-assessment-nfcta-crime-guns-volume-two.

In post-*Bruen* challenges to 18 U.S.C. 922(o), courts have already rejected similar arguments that claimed the existence of *even* 740,000 privately-owned machineguns was sufficient to show "common use." *United States v Simien*, 655 F.3d 540, 553 (W.D. TX Feb. 10, 2023) ("740,000 [machineguns]… – which is less than .2% of total firearms in the United States – remains too insignificant for machineguns to be considered in common use."); see also *United States v. Cooperman*, 2023WL4762710, *3 (N.D. IL. July 26, 2023); *United States v. Lane*, 2023 WL 5663084, *15-16 (E.D. VA. August 31, 2023).

Additionally, Hudgins points to no data to indicate that analogous weapons were used by private citizens when the Bill of Rights was enacted. Under *Miller* and *Heller*, therefore, he has not demonstrated how the plain text of the Second Amendment covers his possession of a machinegun as a firearm "in common use at

6

the time" by private citizens. Hudgins also cannot contend that he possessed the machinegun for lawful purposes. Indeed, in addition to illegally possessing the machinegun, Hudgins was committing numerous other crimes including carrying a concealed weapon, Mich. Comp. Laws § 750.227, brandishing a firearm, § 750.227, and resisting police, § 750.81d.

The Sixth Circuit, among many others, has relied on *Heller* to conclude that machineguns fall outside of the Second Amendment's scope. *Hamblen v. United States*, 591 F.3d 471, 473-74 (6th Cir. 2009) (finding the right to keep and bear arms does not authorize an unlicensed individual to possess unregistered machineguns for personal use); *see also United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 141-44 (3rd Cir. 2016) (finding "the Second Amendment does not protect the possession of machineguns. They are not in common use for lawful purposes."); *Hollis v. Lynch*, 827 F.3d 436, 449-51 (5th Cir. 2016) (finding that because machineguns are dangerous, unusual, and not in common use, they do not receive Second Amendment protection); *United States v. Fincher*, 538 F.3d 868, 873-74 (8th Cir. 2008) (finding machineguns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use); *United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012)

(finding that short of bombs, missiles, and biochemical agents, few weapons are more dangerous than machineguns and thus the Second Amendment does not apply.)

Every post-*Bruen* challenge to 18 U.S.C. § 922(o) that counsel has identified has been denied because the plain text of the Second Amendment does not cover the possession of machineguns. See *United States v Simien*, 655 F.3d 540, 552-54 (W.D. Tex. Feb. 10, 2023) ("machineguns are within the category of 'dangerous and unusual' weapons that do not receive Second Amendment protection"); *United States v Smith*, 2023 WL 6880423, *2 (E.D. Ky. Oct. 18, 2023) (Nothing in *Bruen* disturbs the Sixth Circuit's holding in *Hamblen* that the Second Amendment does not authorize the unlicensed possession of an unregistered machinegun for personal use.) (citing *Hamblen*, 591 F.3d at 474); *United States v Sturgeon*, 2023WL6961618, *3 (E.D. KY Oct. 20, 2023) (because 922(o) regulates conduct outside of the scope of the Second Amendment, *Bruen* analysis ends at the first step); *United States v Delafose*, 2023 WL 7368239, *2 (W.D. La. Nov. 7, 2023) (finding machineguns are not protected by the Second Amendment because they are dangerous and unusual and therefore not in common use); (*United States v Kittson*, 2023WL5015812, *2-3 (D.C. Ore. Aug. 7, 2023) (defendant failed to satisfy step one of *Bruen* because machineguns are not protected by the Second Amendment); *United States v. Lane*, 2023 WL 5663084, *13-16 (E.D. Va. August 31, 2023) ("[m]achineguns are 'dangerous and unusual' weapons, and thus not weapons in "common use."); *United*

*States v. Hart*, 2024 WL 893335, *3 (D. Minn. Mar. 1, 2024) (only weapons in common use are afforded protection under the Second Amendment). The government is unaware of any decisions to the contrary. Hudgins has identified none.

In short, in light of binding Supreme Court precedent holding that the Second Amendment protects only those weapons "in common use" by private citizens at the time of its enactment—and Sixth Circuit precedent extending that conclusion expressly to machineguns—this Court should deny Hudgins's motion to dismiss because the plain text of the Second Amendment does not cover the possession of machineguns.

### C. Prohibiting the possession of machineguns is consistent with the Nation's historical tradition of firearm regulation.

Even if this Court were to conclude that the Second Amendment's plain text protects the possession of machineguns, Section 922(o) still does not violate the Second Amendment because the statute "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.

To assess "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding," *Bruen* contemplated two avenues of inquiry: (1) a "straightforward historical inquiry" to search for, most relevant here, historical regulations similar to the modern-day regulatory counterpart at issue or evidence that a comparable historical regulation was rejected on constitutional grounds; or (2) a "historical analogy," for instances where there is no

9

such straightforward correspondence between the challenged law and predecessors. *Id*. at 2131-34. Recently, the Supreme Court further clarified that *Bruen*'s historical analysis does not require an exact one-to-one match between a historical regulation and modern law. Instead, "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (emphasis added). There is no requirement for a "historical twin." *Id*. The Court also explained that the allowable scope of firearm regulation was not fixed in stone at the founding, and "permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 1897-1898.

    For purposes of Hudgins's challenge to Section 922(o), the "straightforward historical inquiry" that *Bruen* described suffices. *Heller* explained—and *Bruen* did not disturb—that this nation's "historical tradition" includes "prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 627. For example, under English common law, "the offense of riding or going armed, with dangerous or usual weapons, [was] a crime." 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769). In the United States, too, courts long ago acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (NC 1824) (citing 1 Hawkins 136). For that

10

reason, the Second Amendment encompasses only arms "of the kind in common use." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179).

The common-use limitation is consistent with the Second Amendment's prefatory clause: "The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 624. *Heller* explained that, while a militia today might "require sophisticated arms that are highly unusual in society at large," the Second Amendment at the time of its ratification embodied the idea that citizens capable of military service "would bring the sorts of lawful weapons that they possessed at home to militia duty." *Id*. at 627. But *Heller* held that "the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Id*. at 627-28.

*Bruen* did not change this aspect of *Heller*. Instead, *Bruen* reaffirmed *Heller*'s finding there is a "fairly supported" "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Bruen*, 142 S. Ct. at 2128 (citing 4 W. Blackstone, Commentaries on the Laws of England at 148-149: *Miller*, 307 U.S. at 179). *See also supra* at 6 (describing how the concurring opinions in *Bruen* continued to recognize important limitations on the right to bear arms). And in *Rahimi*, the Court specifically noted that certain categorical prohibitions are presumptively lawful. *Rahimi*, 144 S. Ct. at 1902.

11

The surety laws and "going armed" laws analyzed in *Rahimi* also support a finding that § 922(o) is constitutional. They confirm that: "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 1901. By itself, the act of going armed in public with a dangerous and unusual weapon poses a clear threat of violence to others. The purpose of carrying a machinegun is to inflict violence. As outlined above, the nation's response to such threats has been a history of firearm regulation banning dangerous and unusual weapons. Hudgins's argument that there were no "relevantly similar" statutes to 922(o) at the founding is unavailing.

In light of *Heller*'s conclusion that our nation's historical tradition includes regulating dangerous and unusual firearms—a conclusion rooted in a variety of historical resources and further supported by *Rahimi*—this Court should reject Hudgins's constitutional challenge to § 922(o) on historical grounds, assuming it does not already conclude that the plain text of the Second Amendment does not cover the possession of machineguns.

### D. Hudgins's possession of a machinegun is not protected by Second Amendment.

Because the possession of machineguns is not protected by the Second Amendment, Hudgins's possession of a machinegun was not an exercise of his Second Amendment rights. He got high, illegally concealed the weapon on his person, brandished the loaded machinegun inside of a busy restaurant, ran from

police, and discarded the dangerous firearm in a backyard where anyone, including a child, could find it. His as-applied challenge to 18 U.S.C. § 922(o) must also fail.

## II.    Conclusion

For the reasons set forth above, Hudgins's motion should be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney


*s/Jeremiah G. Smith*
JEREMIAH G. SMITH
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0242
jeremiah.smith@usdoj.gov

Date: August 13, 2024

## CERTIFICATE OF SERVICE

I certify that on August 13, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification of this filing to all users of record via electronic mail.

*s/Jeremiah G. Smith*
JEREMIAH G. SMITH
Assistant United States Attorney