UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No.  24-20196

v.

                        Hon. Laurie J. Michelson

AXZAVIER HUDGINS,

        Defendant.
_____/

**REPLY REGARDING MOTION TO DISMISS THE INDICTMENT PURSUANT TO THE SECOND AMENDMENT**

The government's response to Axzavier Hudgins's motion to dismiss under the Second Amendment is unpersuasive. The government emphasizes that no court had held 18 U.S.C. § 922(o) is unconstitutional. (R. 37, Resp., PgID 189.) That is no longer true. In *United States v. Morgan*, No. 23-10047-JWB, 2024 WL 3890184, at *1 (D. Kan. Aug. 21, 2024), the court concluded, as required by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889, 1902–03 (2024), that § 922(o) is unconstitutional as applied to Glock switches. Although not the government preferred policy

1

outcome, the *Morgan* decision is faithful to controlling Supreme Court precedent, and this Court should reach the same result.

The Sixth Circuit has yet to apply *Bruen* to § 922(o), and pre-*Bruen* caselaw is not helpful in analyzing the statutory under the now-controlling standard for interpreting gun regulations. The government points to language in *Heller* about weapons "in common use at the time" of passage of the Second Amendment. (R. 37, Resp., PgID 189, quoting *District of Columbia v. Heller,* 554 U.S. 570, 625, 627 (2008)). But "the government's interpretation of *Heller* relies exclusively on dicta (and circuit authority that predates the historical analysis mandated in *Bruen*)—machineguns were not at issue in *Heller*." *Morgan*, 2024 WL 3890184, at *2. And "the government's interpretation would run directly counter to the essential analysis in *Heller*: just as the Fourth Amendment applies to modern 'searches,' the Second Amendment applies to arms that did not exist at the country's founding." *Id.*

Further unavailing is the government's reliance on *Heller*'s comments about *United States v. Miller*, 307 U.S. 174 (1939), which rejected a challenge to a prohibition against carrying unregistered sawed-off shotguns across state lines. *Heller* "simply observed

2

that *Miller* fit within the tradition of regulating 'dangerous and unusual weapons.'" *Morgan*, 2024 WL 3890184, at *2. But "*Heller*, because it predates *Bruen*, however, certainly does not say that the Second Amendment does not apply to bearable machineguns." *Id*. "It merely implies that restrictions on 'dangerous and unusual weapons' can be consistent with this nation's history and tradition of firearm regulation." *Id*. "This touches on what is now the second step of *Bruen*, rather than the first step." *Id*. "Suffice it to say that the weapons at issue in this case are bearable arms that, under *Bruen*'s first step, are covered by the plain text of the Second Amendment." *Id*.

As to the second step of *Bruen*, the government acknowledges that at this step it must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. (R. 37, Resp., PgID 195–96.) The government says it meets this standard because in common law it was illegal to go armed with "dangerous or unusual weapons." (*Id*. at 196–97.) But, as again discussed in *Morgan*, this argument fails.

Morgan explains that the "going armed" laws the government points to are not analogous to § 922(o) because those laws focused on

3

conduct with guns, not mere possession. *Morgan*, 2024 WL 3890184, at *4. "If an individual purchases such a weapon and locks it away in a gun safe in his basement for twenty years without touching it, he is just as guilty of a violation of § 922(o) as one who takes the same weapon out on the public streets and displays it in an aggressive manner." *Id*. "The statute requires no more than possession, and, more importantly in an as-applied challenge, the indictment in this case alleges nothing more." *Id*. The same is true here.

As pointed out in Hudgins's motion, *Rahimi* supports Hudgins's argument for the same reason. The Court emphasized there that the domestic violence restraining order at issue, § 922(g)(8)(C)(i), was like the historical surety regime because it was "individualized," and "of limited duration." *Rahimi*, 144 S. Ct. at 1899, 1901–02. So-called "going armed" laws—again, like § 922(g)(8)(C)(i)—were similarly limited in scope, disarming people based on individualized determinations that they threatened public safety rather than overly broad categorical bans. *Id*. at 1900. Moreover, a person subject to a surety bond received "significant procedural protections" and "could obtain an exception if he needed his arms for self-defense." *Id*. In contrast, § 922(o) is a categorical,

4

permanent ban on any possession of a machinegun. It thus violates the Second Amendment as interpreted in *Bruen* and *Rahimi*.

Moreover, machineguns are not dangerous or unusual, or highly unusual in society at large. Again, *Morgan* is instructive:

> Machineguns have been in existence for well over a century. While the federal government has regulated transfer and possession of such weapons since passage of the National Firearms Act in 1934, it did not outright prohibit possession of machineguns until passage of the Firearms Owners Protection Act in 1986. Even then, the law did not prohibit the possession of all machineguns; rather, § 922(o) merely prohibits possession of machineguns that were not lawfully possessed as of the date that prohibition went into effect in 1986. § 922(o)(2)(B). Thus, even today, it is perfectly legal for a person who has not been divested of his firearm rights under some other provision of law to acquire and possess a machinegun, so long as it was lawfully possessed by someone before the relevant date in 1986, and so long as he complies with the National Firearms Act's requirements to obtain and possess the weapon. In that sense, machineguns are not unusual. The government fails to address these facts, and thus fails to meet its burden to demonstrate that possession of the types of weapons at issue in this case are lawfully prohibited under the Second Amendment.

*Morgan*, 2024 WL 3890184, at *4.

For the same reasons, the indictment against Hudgins should be dismissed because the charge against him violates the Second Amendment, both facially and as applied.

5

## CONCLUSION

The Court should dismiss the Indictment because the prosecution violates Hudgins's Second Amendment right to keep and bear arms.

Respectfully submitted,

s/Benton C. Martin
FEDERAL COMMUNITY DEFENDER
Attorney for Axzavier Hudgins
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Phone: (313) 967-5832
E-mail: Benton_Martin@fd.org

Dated: August 22, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No.  24-20196

v.

                              Hon. Laurie J. Michelson

AXZAVIER HUDGINS,

        Defendant.
_____/

## CERTIFICATE OF SERVICE

I certify that I filed this document, on August 22, 2024, using the CM/ECF system, which will notify opposing counsel of record.

                              s/Benton C. Martin
                              FEDERAL COMMUNITY DEFENDER
                              Attorney for Axzavier Hudgins
                              613 Abbott Street, Suite 500
                              Detroit, Michigan 48226
                              Phone:   (313) 967-5832
                              E-mail:  Benton_Martin@fd.org