UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO.  24-20196

v.

                           HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
_____/

**REPLY REGARDING MOTION TO DISMISS
PURSUANT TO *GARLAND V. CARGILL*, 602 U.S. 406 (2024)**

The government does not dispute that it is appropriate for this Court to review, under Fed. R. Crim. P. 12(b)(3)(B)(v), whether a conversion device attached to semiautomatic Glock handgun is a "machinegun" as defined in 26 U.S.C. § 5845(b). Nor does it contest that this Court must apply the rule of lenity here. Instead, it argues that the conversion device enables a handgun to fire multiple fires automatically with a single function of the trigger, and that a controlling reading of the statutory text would render it meaningless. The government's arguments contradict *Garland v. Cargill*, 602 U.S. 406 (2024), and should be rejected.

1

The parties agree on the factors for this Court to consider: Particularly, even if a modified semiautomatic firearm fires more than one shot "by a single function of the trigger," it must also do so "automatically" to meet the definition of a firearm. *Cargill*, 602 U.S. at 424. (R. 36, Resp., PgID 181.) The government also does not dispute that, consistent with *Cargill*, this Court must carefully examine the mechanical functionality of the conversion device to see if the particular device meets the statutory definition.

The government argues, however, that conversion devices are like a nozzle grip on a garden hose allowing for a constant stream of water with a single squeeze of a trigger. (R. 36, Resp., 182–83.) That's not quite right. As with bump stocks, "firing multiple shots" with a switch "requires engaging the trigger one time—and then some." *Cargill*, 602 U.S. at 424. The "member" attached to the switch must repetitively contact the trigger bar during its reciprocation, and to allow for that function, the shooter must maintain the right amount of pressure on the trigger. As a result of these multiple steps, and the necessary action by the shooter, switches do not fire multiple rounds "automatically" with "a single function of the trigger" as those terms are defined in § 5845(b).

Contrary to the government's argument, conversion devices do require use of the trigger "and then some" because the shooter must maintain consistent pressure to allow the member on the switch to repetitively hit the trigger reset bar. The device is a not a machinegun as defined in *Cargill* and § 5845(b).

As expected, the government also argues that interpreting § 5845(b) to exclude Glock switches, would render the statute useless. (R. 36, Resp., 184–85.) The government ignores that *Cargill* addressed this argument directly and explained why this argument cannot overcome the statutory text:

> The presumption against ineffectiveness cannot do the work that ATF and the dissent ask of it. A law is not useless merely because it draws a line more narrowly than one of its conceivable statutory purposes might suggest. Interpreting § 5845(b) to exclude semiautomatic rifles equipped with bump stocks comes nowhere close to making it useless. Under our reading, § 5845(b) still regulates all traditional machineguns. The fact that it does not capture other weapons capable of a high rate of fire plainly does not render the law useless.

*Cargill,* 602 U.S. 406, 410.

Section 922(o) continues to ban traditional machineguns, so it is not ineffective. If Congress also wants to ban selector switches that modify the trigger bar of semiautomatic handguns, then it must do so explicitly.

Because Glock switches do not fire multiple rounds "automatically" by a "single function of the trigger," this Court should dismiss the charge against Hudgins.

## CONCLUSION

The Court should dismiss the Indictment because the government's allegation that Hudgins possessed a semiautomatic handgun equipped with a selector switch fails to state an offense under 18 U.S.C. § 922(o).

Respectfully submitted,

s/Benton C. Martin
FEDERAL COMMUNITY DEFENDER
Attorney for Axzavier Hudgins
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Phone: (313) 967-5832
E-mail: Benton_Martin@fd.org

Dated: August 22, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO.  24-20196

v.

                              HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
        _____/

## **CERTIFICATE OF SERVICE**

I certify that I filed this document, on the listed date, using the CM/ECF system, which will notify opposing counsel of record.

                              s/Benton C. Martin
                              FEDERAL COMMUNITY DEFENDER
                              Attorney for Axzavier Hudgins
                              613 Abbott Street, Suite 500
                              Detroit, Michigan 48226
                              Phone:   (313) 967-5832
                              E-mail:  Benton_Martin@fd.org