UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            CR. NO. 24-20196

   v.                                      HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
_____/

## Axzavier Hudgins's Sentencing Memorandum

Axzavier Hudgins is not yet truly an adult, and this is his first adult conviction of any kind, a federal felony. During his time in jail, he has had long, remorseful conversations with counsel and with his family, especially his mother, about the mistakes that led him to be in federal detention—abusing drugs, hanging around the wrong crowd, and not taking his mental health and education seriously.

As the Sentencing Commission recognizes, youthful individuals "are more amendable to rehabilitation." USSG § 5H1.1. Hudgins has the strong support of his mother and extended family. Even in custody he started working toward his GED. He is reflective on how he wants to make changes in his life and eager to prove himself and provide for his young child. He asks this Court to depart and/or vary

downward from the sentencing guidelines and impose a term of one year and a day in custody followed by a term of supervision.

# I.
# Hudgins's History and Characteristics

### A. Poverty and trauma

Hudgins's mother Alana Jennings, who works as a mail carrier, is his biggest cheerleader and supporter. But raising him was not easy. Alana already had Hudgins's older sister Amayah when she became pregnant again with him as a teenager. She struggled financially to support her young family. Hudgins, her oldest son, felt protective of her and like he needed to fight for her. PSR ¶ 48.

Growing up, Hudgins lacked a strong male role model, and to make matters worse, right as he started to reconnect with his father, during his late elementary years, his father committed suicide. PSR ¶ 49. Hudgins was 10 years old—old enough to know what happened but not to process it in a healthy way.

By age 14, within a few years of his father's suicide, Hudgins was experiencing mood disturbances, and his mother took him to a counselor, but it did not last. By age 15, he turned to substance abuse and to friends in the neighborhood. By age 17, he had two juvenile adjudications, one for being in a stolen car with other young men, and another for running from police at a traffic stop. These offenses appear related to untreated trauma surrounding the death of his father leading him to

be around the wrong crowd. As his mother explains, he has seemed "mentally off" since his father's suicide. (PSR ¶ 57.) This trauma can be addressed through mental health services on supervision. Community supervision also is less expensive than prison, and allows for more effective rehabilitation programs because it allows people to obtain treatment in the natural context of their lives rather than behind bars. Vera Institute, The Potential of Community Corrections to Improve Safety & Reduce Incarceration 4–5 (July 2013), https://perma.cc/4GRU-SMZT. It also allows offenders to retain beneficial social ties to their communities.

### B. Importance of Hudgins's youth

Hudgins has two juvenile adjudications that have resulted in a criminal history of II. Hudgins has no prior adult convictions or felony offenses. He has no history of violence or gun crimes. Even his uncharged and pending conduct (which this Court should not consider) involves nonviolent stolen property charges.

If not for the juvenile adjudications, Hudgins's guideline range would reduce to 18 to 24 months. A newly issued amendment by the Sentencing Commission endorses extensive research about how brain development is not complete during youth and how there are inadequate procedural protections in juvenile adjudications. *See* USSC, Proposed 2024 Amendments to the Federal Sentencing Guidelines, at 13-15 (2023), https://perma.cc/9D2W-FWUL. This research undermines the

reasoning that Hudgins's mistakes as a youth support a higher sentence, and it supports a reduction below the guideline range.

In addition, African American children, like Hudgins, are more likely to face criminal-justice consequences than White children for acting out in adolescence. Kristin Henning, *Criminalizing Normal Adolescent Behavior in Communities of Color*, 98 Cornell L. Rev. 383, 460 (2013). And police intervention is often counter-productive: juvenile detention further disrupts proper development, leading to higher likelihood of re-offense or incarceration. *Id.* at 454, 456.

Unfortunately, "contemporary narratives portraying youth of color as dangerous and irredeemable lead police, probation officers, and prosecutors to reject age as an excuse or mitigation for these youth." *Id.* But "the unique developmental status of adolescents" make them particularly amenable to treatment and diminish their culpability in criminal activity. *Id.*

The final version of the new guideline amendment, in USSG § 5H1.1, recognizes a downward departure is appropriate here because of Hudgins's age. The provision recommends a sentence below the guideline range because of a defendant's "youthfulness at the time of the offense or prior offenses." *Id.* This downward departure is appropriate because "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences,

4

substance use, lack of educational opportunities, and familial relationships." *Id.* "In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood." *Id.* As a result, "[y]outhful individuals also are more amenable to rehabilitation." *Id.*

This provision applies here because both this offense and Hudgins's two priors happened while he was a youth. His actions attest to impulsive thinking and outside influences, but also to his strong ability to be rehabilitated. His youth and amenability to rehabilitation counsel in favor of a sentence below the range.

The government wrongly claims that application of this provision requires age to be present to "an unusual degree." (R. 92, PSR, PgID 500–01.) The Sentencing Commission explicitly removed the "unusual degree" language as part of the 2024 amendment to § 5H1.1, so that the departure provision no longer requires youth to be present to an "unusual degree" to warrant a departure.

### C. Steps toward the future

To Hudgins's credit, he maintains a healthy co-parenting relationship with the mother of his child, who is now two years old. PSR ¶ 53. He also has work history despite his young age, having worked in construction with his uncle, at Amazon, and at Taco Bell. PSR ¶¶ 67–69. He also remains close with his mother and his siblings. Below are pictures of Hudgins with his family:

5


Hudgins with his daughter


Hudgins with his mother, the mother of his child, and her mother


Hudgins with siblings and grandfather

Hudgins's plans for the future show a growing maturity. He wants to earn his GED, and he took concrete steps toward that goal by starting GED classes while at the Livingston County Jail. PSR ¶ 66. He wants to learn a trade, particularly plumbing. PSR ¶ 65. He acknowledges that he may need substance abuse treatment and mental health services. In conversations with counsel, he has expressed a desire to be productive and provide for his family.

Hudgins's chances of success only grow as he ages. As a youth, decision-making is more often based on impulse than logic. Mariam Arain, et al., *Maturation of the Adolescent Brain*, 9 NEURO. DISEASE & TREATMENT 453 (2013), https://perma.cc/2FBA-WRVJ. Youth "is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage." *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982). With the right guidance, Hudgins can have a promising future, and that guidance will be more effective in the community, on strict terms of supervision, than in prisons.

## II.
## Nature of the Offense

Hudgins fully accepts responsibility for violating the law, is remorseful, and recognizes that this was a very serious offense. Counsel notes that, before this offense, Hudgins had no prior felony convictions that would have prohibited him from a possessing a standard handgun, and that the conversion device that rendered

7

his gun illegal is a cheap and common add-on. Despite pleading to a "machinegun" charge, he is neither a sophisticated nor incorrigible firearm offender.

## III.
## Just Punishment, Deterrence, and Protection of the Public

The experience of being confined in local detention facilities, appearing in federal court, repeatedly meeting with counsel, and ultimately being placed on strict terms of federal supervision, will adequately address the punishment and deterrence. The community generally supports sentences lower than the firearm guidelines. Hon. James S. Gwin, *Juror Sentiment on Just Punishment,* 4 HARV. L. & POL'Y REV. 173, 182 (2010). Real jurors believed the low end of the range was "almost three times higher" than necessary. *Id.* at 187–88. Even DOJ agrees that certainty of being caught is more important in deterring crime than length of sentence. DOJ, *Five Things About Deterrence* (2016), https://perma.cc/T5VW-G789. Simply put, empirical research shows that imposing a guidelines sentence will not significantly increase the deterrent effect of this sentence on Hudgins or others.

Further, Hudgins has served hard time in county jails during the pendency of this case, and it has served as a stronger deterrent than any longer term being transported to BOP will achieve. Time in pretrial detention can render an individual "a more sober-minded individual," who will reasonably be able to comply with terms of supervision upon release. *See United States v. Thrasher*, Case No. 17-mj-

8

30200, ECF Doc. 7 (E.D. Mich. Apr. 27, 2017). This case, and Hudgins's incarceration, has served as a wake-up call. He has never done serious time in custody. He is well aware now of the ramifications. He misses seeing his child. He wants to find employment. He is ready for the opportunity to prove himself on supervision.

In addition, prolonged incarceration of youth in adult facilities leads to negative physical and mental health outcomes. It is rare to have a 19 year old in the federal prison system. (Recent statistics show that less than 1% of federal prisoners are between the ages of 18 and 21, *see* Federal Bureau of Prisons, Inmate Age, https://perma.cc/JG9P-8BQY.) Further, "being incarcerated in an adult correctional facility may be associated with an increased risk of early mortality between 18 and 39 years of age." Ian A. Silver, et al., *Incarceration of Youths in an Adult Correctional Facility and Risk of Premature Death,* J. Am. Med. Ass'n (2023), https://perma.cc/ZRN7-4R9J. There are also increased reports of PTSD and depression. *Id.* The best resolution to protect the community is a short term in custody followed by a term of community supervision.

### IV.
### Need to Avoid Unwarranted Sentencing Disparities

This Court should also be cognizant of the disparate application of the gun laws to African American men. The most-recent statistics, from 2024, show that not

only are well over 50% of all those convicted of federal gun crimes were Black[1]—but also Black males receive sentences longer than White males convicted of the same types of firearm offenses.[2] Moreover, this disproportionate racial disparity has existed for at least the past 10 years, since as far back as the U.S. Sentencing Commission began publishing this data in 2007.[3]

Part of this disparity may come from implicit bias in arrests. Another part may come from a disparity in the rate of African Americans with felony convictions: One in three African American men goes to prison in their lifetime, compared to one in every seventeen White men.[4]

Also noteworthy is that the guidelines' recommended sentence for gun crimes has drastically increased over the years, without empirical evidence for support. *See Kimbrough v. United States,* 552 U.S. 85, 108–10 (2007) (guidelines determined without benefit of empirical evidence less reliable appraisals of fair sentence). In 1988, the base offense level (before acceptance) was 9.[5]

---

[1] USSC, *Race of Sentenced Individuals in Firearms Cases* (2023), https://perma.cc/WC6X-67JY.
[2] USSC, *Demographic Differences in Federal Sentencing* 29 (2023), https://perma.cc/DQ8B-LSFN.
[3] USSC, *Quarterly Sentencing Updates 2007-2017*, https://goo.gl/iXdtVA.
[4] Report of the Sentencing Project to the U.N. Human Rights Committee: Regarding Racial Disparities in the United States Criminal Justice System (Aug. 2013), https://perma.cc/D4UW-CKAE.
[5] USSG § 2K2.1 (1988), https://perma.cc/6E9K-4SKJ.

Hudgins's case exemplifies the disparate effects of the collateral consequences of felony convictions. This conviction—for conduct at age 18—will prohibit him for life from ever possessing a gun again. Hudgins respectfully requests that this Court sentence him to a year and day in custody in light of the disparate effect of lengthy sentences in firearm cases on the African American community.

## CONCLUSION

Hudgins asks for a sentence of a year and day in custody.

Respectfully submitted,

/s/ Benton C. Martin
Attorney for Axzavier Hudgins
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, Michigan  48226
Phone:	313-967-5832
Email:	benton_martin@fd.org

Date:  February 6, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                CR. NO. 24-20196

v.                            HON. LAURIE J. MICHELSON

AXZAVIER HUDGINS,

        Defendant.
_____/

CERTIFICATE OF SERVICE

    I hereby certify that on February 6, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification to opposing counsel.

                                                s/ Benton C. Martin